In re:

TWIN PINES, LLC,  Case No.: 19-10295-j11
a New Mexico limited liability company,

    Debtor.

## MEMORANDUM OPINION

THIS MATTER came before the Court on the Amended Proof of Claim filed by First Alamogordo Bancorp of Nevada, Inc., d/b/a First National Bank ("FNB") on July 30, 2021 (Claim 3-2) and the Amended Proof of Claim filed by Michael W. Bowen (Bowen) on July 30, 2021 (Claim 5-3). FNB seeks to increase the value of the collateral securing its claim by the value of certain equipment that the Debtor, Twin Pines, LLC ("Twin Pines"), acquired after it commenced this bankruptcy case.[1] Bowen seeks allowance of his claim as a secured claim, instead of an unsecured claim, and claims a lien against the same equipment that Twin Pines acquired post-petition. The Court concludes that the claimed liens have not attached to the equipment based on what has occurred to date.

## PROCEDURAL HISTORY

Twin Pines commenced this bankruptcy case on February 12, 2019 under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-1532.[2] FNB timely filed a Proof of Claim (Claim 3-1) on April 16, 2019. Bowen timely filed a Proof of Claim (Claim 5-1) on May 23, 2019 and an

---

[1] FNB made the election under 11 U.S.C. § 1111(b)(2) (the "§ 1111(b) election") to treat its entire claim as a secured claim. *See* Doc. 272. In the Order Resulting from Final Hearing on Claims 3 and 4 and Status Conference on Certain Confirmation Hearing Exhibits (Doc. 324) the parties stipulated to the amount of FNB's allowed secured claim for purposes of the § 1111(b) election and for purposes of applying 11 U.S.C. § 1129(a)(7)(A)(ii) and 11 U.S.C. § 1129(b)(2)(A)(i)(II), but no stipulation was made regarding whether the value of the collateral securing FNB's claim should be increased by the value of equipment acquired post-petition for purposes of applying 11 U.S.C. § 1129(a)(7)(A)(ii) and § 1129(b)(2)(A)(i)(II).

[2] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

amended Proof of Claim (Claim 5-2) on September 6, 2019. Twin Pines objected to FNB's Claim No. 3-1 and to Bowen's amended claim No. 5-2. (Docs. 58, 264).[3]

After learning that Twin Pines acquired certain equipment post-petition, FNB filed an Amended Proof of Claim (Claim 3-2) to assert that the after-acquired equipment was additional collateral securing its claim.[4] Bowen likewise filed a second Amended Proof of Claim (Claim 5-3) to assert that his claim is secured by that same equipment.

Twin Pines objected to FNB's Claim 3-2 and Bowen's Claim 5-3 (Docs. 353 and 354), and the Court held hearings on Twin Pines' objections to the claims of FNB and Bowen, as supplemented, over several days. The Court took the matters under advisement following the hearing held October 22, 2021.

## FACTS[5]

Pursuant to Fed.R.Civ.P. 52(a), made applicable by Fed. R. Bankr. P. 9014 and 7052, the Court makes the following findings of fact.[6]

---

[3] Twin Pines also objected to FNB's Claim No. 4-1 (Doc. 266). With respect to FNB's Claim No. 4-1, Twin Pines and FNB made certain stipulations set forth in the Order Resulting from Final Hearing on Claims 3 and 4 and Status Conference on Certain Confirmation Hearing Exhibits (Doc. 324) that resolves the objection.

[4] At a hearing on Twin Pines' objections to FNB's Claim No. 3-1 and Bowen's Claim No. 5-2 held July 8, 2021, FNB first presented its argument that certain equipment Twin Pines acquired post-petition is additional collateral securing its claim. The Court fixed a deadline of July 30, 2021 for FNB and Bowen to supplement their claims. (Doc.343).

[5] The parties consented to the Court considering testimony presented at a prior hearing held January 19, 2021 on Debtor's Motion for Use of Cash Collateral (Doc. 202) as evidence on the pending objections to FNB's Claim 3-2 and Bowen's Claim 5-3. With the parties' consent, the Court will also consider all admitted exhibits and testimony from the prior hearings on Twin Pines' objections to FNB's and Bowen's claims held before those claims were amended to assert a secured claim on the equipment Twin Pines acquired post-petition. In addition, the Court takes judicial notice of the docket in this bankruptcy case and the documents filed of record as reflected on the docket.

[6] If the Discussion (below) relies on any facts not stated in the Facts section of this opinion, then those facts set forth in the Discussion also constitute findings of fact by the Court.

A.  **Twin Pines' Business**

Twin Pines is a New Mexico limited liability company. John Pacheco Sr. ("Pacheco Sr.") is Twin Pines' managing member. At the time Twin Pines commenced its chapter 11 case, Pacheco Sr., John C.A. Pacheco Jr. ("Pacheco Jr.") and Jason Edmister ("Edmister") owned membership interests in Twin Pines ("Membership Interests" or "Membership Interest" when referring to an individual's percentage interest) of 40%, 20%, and 40%, respectively.

Twin Pines owns and operates a car wash in Ruidoso, New Mexico doing business as Ruidoso Laserwash. Ruidoso Laserwash has been in operation since 2006 or 2007. It has two wash bays. The car wash business includes living quarters Twin Pines historically has provided to the manager of the car wash as partial compensation.

Twin Pines also owns and leases four condominium units (the "Rental Units") in Ruidoso. Twin Pines uses revenue from the car wash and Rental Units to finance its operations.

B.  **FNB Financing**

Twin Pines purchased the car wash with financing of $525,000,[7] then refinanced the original borrowing in 2016, with FNB as lender. As part of the refinancing, Twin Pines also borrowed additional funds from FNB for construction of the Rental Units. The refinancing and additional advanced funds resulted in a loan in the principal amount of $995,000 (the "2016 Loan").[8] The 2016 Loan is secured by Twin Pines' real property, equipment, and general intangibles, as well as an assignment of rents.[9]

---

[7] At the final hearing, the parties disputed whether FNB originated the 2015 loan or acquired it from Compass Bank. Resolution of this fact is immaterial to the Court's decision.
[8] *See* Exhibit 4.
[9] *See* Exhibits 6, 7, 8, 9, 10, 11, 12, 13, and 14.

Bowen is a former member of Twin Pines. While he was a member, on August 18, 2015, Bowen executed a Commercial Guaranty in which Bowen guaranteed, among other things, Twin Pines' payment of its debt in favor of FNB.[10] The Commercial Guaranty provides, in part:

> Guarantor [Bowen] does hereby assign to Lender [FNB] all claims which it may have or acquire against Borrower [Twin Pines] or against any assignee or trustee in bankruptcy of Borrower [Twin Pines] or; provided however, that such assignment shall be effective only for the purpose of assuring to Lender [FNB] full payment in legal tender of the Indebtedness [owed by Twin Pines to FNB].[11]

In addition, Twin Pines executed a Commercial Security Agreement[12] to secure a $58,000 loan FNB made to Pacheco Sr. and Edmister (the "Pacheco/Edmister Loan").[13] The Pacheco/Edmister Loan is also secured by a third mortgage against Twin Pines' real property.[14]

FNB filed a Proof of Claim in the amount of $1,059,206.66 related to the 2016 Loan (Claim 3-1) and a Proof of Claim in the amount of $48,008.71 related to the Pacheco/Edmister Loan (Claim 4-1).[15] FNB claims a total amount of $1,107,215.37 as of the petition date. In its proofs of claim, FNB lists the collateral for the two loans as having a value of $1,365,000. In its schedules, Twin Pines estimated the value of the collateral securing FNB's loans as $1,265,527.34. However, in Twin Pines' Amended Disclosure Statement, Twin Pines estimated the value of FNB's interest in the collateral as $630,000.[16]

On June 22, 2020, Twin Pines filed a motion asking the Court to value the real property and improvements thereon and the equipment that is collateral for Twin Pines' obligations to

---

[10] *See* Exhibit 25.
[11] *Id.*
[12] *See* Exhibit 19.
[13] *See* Exhibit 18.
[14] *See* Exhibit 22.
[15] The parties stipulated that the total amount of FNB's allowed secured claim based on Claim 4-1 is $48,001.71 for purposes of the § 1111(b) election and that, because the same collateral secures Claim 4-1 and Claim 3-2, the value of the collateral securing Claim 4-1 will not be added to the value of the collateral securing Claim 3-2 for purposes of applying § 1129(a)(7)(A)(ii) and § 1129(b)(2)(A)(i)(II). *See* Doc. 324. The stipulated total amount of FNB's allowed secured claim under § 1111(b)(2) is $1,107,215.37. *Id.*
[16] *See* Doc. 79.

FNB.[17] On January 29, 2021 the Court entered a Memorandum Opinion and an Order valuing the collateral at $900,000.[18] The valued collateral did not include the equipment FNB claims to be proceeds of the Membership Interests pledged to Bowen and does not include other collateral pledged to FNB.

### C. Bowen's sale of his Membership Interests

Prior to June 2016, the Membership Interests in Twin Pines were owned as follows:

| | |
|---|---|
| Michael W Bowen | 50% |
| John Pacheco Sr. | 25% |
| Jason Edmister | 25% |

The Membership Interests are not represented by a certificate or certificates.

On June 2, 2016, Pacheco Sr, Pacheco Jr., Edmister, and Bowen executed a Purchase Agreement of the same date providing that Bowen would sell his 50% Membership Interest as follows: 15% to Pacheco Sr., 20% to Pacheco Jr., and 15% to Edmister.[19] The purchase price was $150,000 to be paid $10,000 down at the time of closing and the balance over time under a promissory note. In addition, in connection with the sale, on June 2, 2016, Pacheco Sr., Pacheco Jr., Edmister, and Bowen:

- executed a Pledge and Security Agreement[20] under which Pacheco Sr., Pacheco Jr., and Edmister granted Bowen a security interest in the 50% Membership Interest Bowen transferred to Pacheco Sr., Pacheco Jr., Edmister (the "Pledged Membership Interests"); and

- executed a Promissory Note ("Note"),[21] as makers, payable to the order of Bowen in the original principal amount of $140,000 for the unpaid portion of the purchase price for Bowen's 50% Membership Interest.

---

[17] *See* Doc. 142.
[18] *See* Doc. 237.
[19] *See* Exhibit 38, attachment–Exhibit B; Exhibit G.
[20] *See* Exhibit 38, attachment–Exhibit A; Exhibit H. At the hearing held September 7, 2021, neither Bowen nor Pacheco Sr. recalled whether the Pledge and Security Agreement existed, even though it was referenced in the Purchase Agreement. FNB later located a copy of the Pledge and Security Agreement in documents Twin Pines had produced to FNB in discovery.
[21] *See* Exhibit 38, attachment–Exhibit C.

Pursuant to the Purchase Agreement, Bowen executed and delivered three assignments of his Membership Interest in Twin Pines, 15% to Pacheco Sr., 20% to Pacheco Jr., and 15% to Edmister.[22]

After the sale of the Bowen's 50% Membership Interest, the members of Twin Pines were:

Pacheco Sr.   40%
Pacheco Jr.   20%
Edmister      40%

To perfect the security interest in the Membership Interests that Pacheco Sr., Pacheco Jr., and Edmister acquired from Bowen, the Pledge and Security Agreement required Pacheco Sr., Pacheco Jr., and Edmister to execute reassignments ("Reassignments") of the Pledged Membership Interests to Bowen and for those Reassignments to be delivered to Laflin, Pick & Heer, P.A. ("Escrow Agent") to be held by Escrow Agent in in escrow.[23] The Pledge and Security Agreement instructed Escrow Agent to deliver the Reassignments to Bowen in the event of an uncured default under the Note or Pledge and Security Agreement, which would be effective to transfer the Pledged Membership Interests back to Bowen.[24] The Pledge and Security Agreement instructed Escrow Agent to return the Reassignments to Pacheco Sr., Pacheco Jr., and Edmister upon payment of all amounts due to Bowen under the Note and the Pledge and Security Agreement.[25]

---

[22] *See* Exhibit 38, attachment–Exhibit D.
[23] *See* Exhibit 38, attachment–Exhibit A; Exhibit H.
[24] *Id.*
[25] *Id.*

The Escrow Agent held copies, not the originals, of the Reassignments.[26] The disposition of the originals is unknown. Edmister never executed the Reassignment of his 15% Pledged Membership Interest.

### D. Twin Pines' Acquisition of After-Acquired Equipment and the Agreement to Transfer Membership Interests to Ruidoso Capital Reserves

Around mid-June 2020, Pacheco Sr. began discussions with Joanna Pena about investing in Twin Pines. Pacheco Sr. had also previously had a conversation with Eduardo Pena, Ms. Pena's husband, about that possibility. Joanna Pena owns a business entity called International Protection Inc. ("International Protection"). The Penas also operate a business entity called Ruidoso Capital Reserves. Joanna Pena reached an oral agreement with Pacheco Sr. (the "Oral Agreement") that International Protection or ( or International Protection on behalf of Ruidoso Capital Reserves) would pay half the cost to purchase new car wash equipment for Twin Pines, and in exchange, Ruidoso Capital Reserves would receive a 33% Membership Interest in Twin Pines.[27] Eduardo Pena is the representative of Ruidoso Capital Reserves with respect to the investment. There was no agreement regarding the source of the Membership Interests that would result in Ruidoso Capital Reserves owing 33% of Twin Pines. When the parties reached the Oral Agreement, Pacheco Sr. did not disclose to the Penas that Twin Pines was a debtor in a bankruptcy case, and the Penas were unaware of the bankruptcy case. Further, neither the Penas, International Protection, nor Ruidoso Capital Reserves was aware that any Membership Interests

---

[26] *See* Exhibit 38–Affidavit of Dan Pick. Copies of the Reassignments are included in Exhibit 38, attachment–Exhibit E.

[27] It appears from the evidence that International Protection paid the consideration for the Membership Interests and designated Ruidoso Capital Reserves to receive the Membership Interests. It also appears from the evidence that Joanna Pena negotiated the Oral Agreement on behalf of International Protection. The parties and witnesses at times referred to International Protection and Ruidoso Capital interchangeably.

were encumbered. Joanna Pena and International Protection bargained that Ruidoso Capital Reserves would receive an unencumbered 33% Membership Interest in Twin Pines.

Sun Country Car Wash Systems, Inc. ("Sun Country") was the supplier of the Laser Wash Plus system and related equipment and accessories (the "After-Acquired Equipment") to be purchased and installed in Twin Pines' southern wash bay. On June 29, 2020, pursuant to the Oral Agreement, International Protection on behalf of Ruidoso Capital Reserves paid $53,770.01 to Sun Country as a down payment for the After-Acquired Equipment. Sun Country issued an Invoice dated June 30, 2020 for its sale of the After-Acquired Equipment.[28] The Invoice reflected "Bill to John Pacheco" and "Ship To Ruidoso Laser Wash Attn: John Pacheco."[29]

On July 4, 2020 the Penas learned for the first time that Twin Pines was a debtor in a bankruptcy case. Pacheco Sr. explained that Ruidoso Capital Reserves would receive its 33% Membership Interest in Twin Pines upon confirmation of Twin Pines' bankruptcy plan. That was acceptable to the Penas. There was no discussion regarding the source of the Membership Interests that would result in Ruidoso Capital Reserves owing 33% of Twin Pines. The Penas were still unaware that 50% of the Membership Interests had been pledged to Bowen.

The Court makes no finding regarding whether Pacheco Sr. recalled at the time of the Oral Agreement made in June 2020, or when the discussion with the Penas occurred on July 4, 2020, that 50% of the Membership Interests had been pledged to Bowen. Pacheco Sr. did not disclose that fact to the Penas. Twin Pines scheduled Bowen as holding a non-priority unsecured claim based on a Stock Purchase Agreement.[30] Mr. Pacheco testified that he believed Bowen had decided to walk away from his ownership interest in Twin Pines.[31] Pacheco Sr. was unaware that

---

[28] *See* Exhibit C, p. 26.
[29] *Id.*
[30] *See* Doc. 1–Schedule E/F.
[31] A finding reporting on testimony is not a finding of fact that such testimony is true.

Bowen had assigned his right to enforce his lien against the Pledged Membership Interests to FNB. Bowen filed a Proof of Claim (Claim 5-1) on May 23, 2019 and an amended Proof of Claim (Claim 5-2) on September 6, 2019, both asserting a wholly unsecured claim.[32] It was not until Bowen filed a second amended Proof of Claim (Claim 5-3) on July 30, 2021 that Bowen asserted a claim secured by the Pledged Membership Interests.[33]

Pacheco Sr. initially contemplated that Pacheco Jr. would give up his 20% Membership Interest, Edmister would give up 7% of his Membership Interests, and Pacheco Sr. would give up a portion of his Membership Interests in order to give Ruidoso Capital Reserves a 33% Membership Interest. However, Edmister was unaware that Pacheco Sr. contemplated that Edmister would give up a portion of his Membership Interests. Edmister had later discussions with Pacheco Sr. that upon confirmation of Twin Pines' bankruptcy plan, the ownership of the Membership Interests would be Pacheco Sr. 34%, International Protection/Ruidoso Capital Reserves 33%, and Edmister 33%.

Pacheco Jr. graduated from the Air Force Academy. Due to the security clearance requirements of his new job, Pacheco Jr. no longer could own any Membership Interests in Twin Pines. In different hearings Pacheco Sr. testified that Pacheco Jr. will not be compensated for the loss of his 20% Membership Interest and that "we" paid Pacheco Jr. what he paid for his Membership Interests.

Pacheco Sr. also testified that Pacheco Jr. gave his 20% Membership Interest to Pacheco Sr., resulting in Pacheco Sr. owning a 60% Membership Interest and Edmister owning the other 40%. Edmister understood that when Pacheco Jr. gave up his 20% Membership Interest, he and Pacheco Sr. would each own a 50% Membership Interest. No writings were offered in evidence

---

[32] *See* Claim 5-1 and Claim 5-2.
[33] *See* Claim 5-3.

relating to Pacheco Jr.'s relinquishment of his Membership Interests. However, Twin Pines' second plan modification, filed September 20, 2021, provides:

> Prior to confirmation the member ownership in the Twin Pines was and continues to be an Equity class consisting of: John Pacheco 40% owner, also the Managing Member of the Twin Pines, John C.A. Pacheco 20% owner, Member of the Twin Pines Jason Edmister 40% owner. Post confirmation the membership interest will be, John Pacheco, Managing Member, 34%, Jason Edmister 33%, and International Protection, Inc. 33%.[34]

No promise or commitment has ever been made by any of the members of Twin Pines or by Twin Pines to the Penas, International Protection, or Ruidoso Capital Reserves regarding whether International Protection's/Ruidoso Capital Reserves' 33% Membership Interest in Twin Pines would consist in whole or in part of Pledged Membership Interests or unencumbered Membership Interests. The arrangement among Pacheco Sr., Pacheco Jr. and Edmister regarding how International Protection, or its designee, Ruidoso Capital Reserves, would end up with a 33% Membership Interest is fluid. There is no definite agreement among Pacheco Sr., Pacheco Jr., and Edmister regarding which Membership Interests, pledged or unencumbered, would be transferred to International Protection/Ruidoso Capital Reserves, or by whom.

On September 2, 2020, International Protection on behalf of Ruidoso Capital Reserves paid Sun Country an additional $86,656.40 for the After-Acquired Equipment. Pacheco Sr. testified that Pacheco Jr. reimbursed International Protection approximately $23,000 of the $86,656.40. On September 22, 2020, Pacheco Sr. paid Sun Country $11,250 as part of the purchase of the After-Acquired Equipment. Pacheco Sr. testified that he reimbursed International Protection for a portion of the purchase price it paid for the After-Acquired Equipment, but he could not recall how much.

---

[34] *See* Doc. 368. The third plan modification (Doc. 390) contains the same provision.

Sun Country delivered the After-Acquired Equipment directly to the Twin Pines car wash facility in September 2020. Thereafter, in the fourth calendar quarter of 2020, at a cost to it of $34,414 but at no charge to Twin Pines, SilverLine Rehab Construction LLC ("SilverLine"), Pacheco Sr.'s wholly owned limited liability company, installed the After-Acquired Equipment in one of Twin Pines' wash bays. Pacheco Sr. testified that SilverLine would have charged a 38% markup had it done the work for a paying customer.

Pacheco Sr. does not have a clear understanding regarding whether Twins Pines owns the After-Acquired Equipment now that it has been installed in Twin Pines' wash bay. Twin Pines' second plan modification (Doc. 368) clarifies that the After-Acquired Equipment became property of the estate at the time it was installed at Twin Pines' premises:

> Post-petition the debtor acquired equipment commonly referred to as Capital Car Wash Equipment and Accessories ("Equipment and Accessories"). This modification clarifies that the car wash, Equipment and Accessories became the property of the estate at the time it was installed at the debtor's premises. The Equipment and Accessories will continue to be an asset of the estate post-confirmation.[35]

The Court finds that Twin Pines owns the After-Acquired Equipment.

## DISCUSSION

FNB argues that it has a perfected non-avoidable security interest in the After-Acquired Equipment as assignee of Bowen's security interest against the Pledged Membership Interests and proceeds thereof. FNB maintains that the After-Acquired Equipment is proceeds of the Pledged Membership Interests to be transferred to International Protection's designee, Ruidoso Capital Reserves, in exchange for its contribution to the purchase of After-Acquired Equipment, and that the security interest in the Pledged Membership Interests has attached to the After-Acquired Equipment as of proceeds of the Pledged Membership Interests.

---

[35] The third plan modification (Doc. 390) contains the same provision.

Twin Pines counters that the After-Acquired Equipment is not proceeds of the Pledged Membership Interests to which the security interest attaches. Twin Pines argues further that even if FNB has a security interest in the After-Acquired Equipment, the security interest is unperfected both because the security interest in the Pledged Membership Interests was unperfected and because the security interest in the After-Acquired Equipment as proceeds was not separately perfected.

The Court concludes that no portion of the After-Acquired Equipment is proceeds of the Pledged Membership Interests to which FNB's security interest could attach unless and until Pledged Membership Interests are transferred to International Protection or its designee, Ruidoso Capital Reserves. For that reason, it is unnecessary for the Court to decide 1) whether FNB's security interest in the Pledged Membership Interests, as Bowen's assignee, was perfected, 2) whether a security interest in the After-Acquired Equipment as proceeds was perfected, or 3) the effect of an unperfected security interest in the After-Acquired Equipment as proceeds, on FNB's secured claim in the bankruptcy case.

*FNB's security interest in prepetition property of Twin Pines*
*does not automatically attach to after acquired property*

Although FNB's security interest extends to equipment that Twin Pines acquired prepetition, that security interest does not automatically extend to equipment Twin Pines acquired post-petition. Section 552 governs the post-petition effect of a security interest granted by a debtor prepetition. Under that section, a creditor's prepetition security interest in equipment granted under a prepetition security agreement between the debtor and creditor does not extend to equipment the debtor acquires post-petition unless the security agreement extends to proceeds and the after-acquired equipment is proceeds of the debtor's prepetition equipment. *See* § 552(b)(1). The After-Acquired Equipment is not proceeds of Twin Pines' prepetition

equipment pledged to FNB because it was not acquired as a result of the disposition of Twin Pines' prepetition equipment. Therefore, under § 552(a) and (b)(1), even if FNB's security agreement extends to proceeds, FNB does not have a security interest in the After-Acquired Equipment on account of its prepetition security interest in Twin Pines' prepetition equipment.

A creditor also can acquire a security interest in a debtor's after-acquired property by a means other than a prepetition security agreement with the debtor. For example, the bankruptcy court can grant a creditor a security interest in after-acquired property as adequate protection, or a debtor can acquire property post-petition from a third party that is subject to a security interest granted by an entity other than the debtor. Because FNB's prepetition security interest in Twin Pines' equipment does not extend to After-Acquired Equipment under § 552, FNB asserts a security interest in the After-Acquired Equipment based on (a) the grant by the members of Twin Pines of a security interest in their Pledged Membership Interests to Bowen, (b) FNB's position that under the Uniform Commercial Code the security interest in the Pledged Membership Interests extends to the After-Acquired Equipment as proceeds of the Pledged Membership Interests, and (c) Bowen's assignment to FNB under the Commercial Guaranty of his in rem claim against Twin Pines that he has a security interest in After-Acquired Equipment as proceeds of his security interest in the Pledged Membership Interests.

*There is a valid security interest that attached
to the Pledged Membership Interests*

Under the Pledge and Security Agreement, Pacheco Sr., Pacheco Jr., and Edmister granted Bowen a security interest in the Pledged Membership Interests, that is, the 50% Membership Interest that Bowen sold and transferred to Pacheco Sr. (15%), Pacheco Jr. (20%), and Edmister (15%) in June of 2016. That security interest attached to the Membership Interests because 1) Bowen gave value by transferring the his 50% Membership Interest to Pacheco Sr.,

-13-

Pacheco Jr., and Edmister; 2) Pacheco Sr., Pacheco Jr., and Edmister acquired rights in Bowen's 50% Membership Interest; and 3) Pacheco Sr., Pacheco Jr., and Edmister executed a Pledge and Security Agreement granting Bowen a security interest in the Membership Interests they acquired from Bowen, i.e., the Pledged Membership Interests. U.C.C. § 9-203(b).[36]

*The Court need not address, at least for now, whether a security interest in the Pledged Membership Interests or the After-Acquired Equipment was perfected.*

A membership interest in a limited liability company is investment property. A security interest in investment property may be perfected by control. U.C.C. § 9-314(a). The Membership Interests are not represented by a certificate or certificates and therefore are uncertificated securities. U.C.C. §§ 8-102(a)(4), (a)(18). Section 8-106(c) of the U.C.C. governs perfection of an uncertificated security by control. The escrow arrangement set forth in the Pledge and Security Agreement was designed to perfect Bowen's security interest in the Pledged Membership Interests by control. However, the Escrow Agent is not in possession of the Reassignments of the Pledged Membership Interests to Bowen bearing the assignors' original signatures. Further, Edmister did not execute the Reassignment prepared for his signature relating to the Pledged Membership Interest transferred to him.

Notwithstanding the defects in the escrow arrangement, FNB argues that the lien against the Pledged Membership Interests also was perfected by control by virtue of a power of attorney provision in the Pledge and Security Agreement. Twin Pines counters that the security interest cannot be perfected by virtue of a power of attorney provision, and that even if the security interest in the Pledged Membership Interests was perfected and the After-Acquired Equipment is

---

[36] New Mexico as has adopted the Uniform Commercial Code at NMSA 1978, §§ 55-1-101 to 55-12-111. References in this opinion to U.C.C. refer to the Uniform Commercial Code as adopted in New Mexico.

-14-

proceeds (Twin Pines asserts neither is true), the security interest in After-Acquired Equipment as proceeds of the Pledged Membership Interests is unperfected because it was not perfected as required by U.C.C. § 9-315(a). The Court need not decide whether Bowen's security interest in the Pledged Membership Interests was perfected by control, or otherwise, or whether, if perfected, there is also a perfected security interest in After-Acquired Equipment as proceeds, at least at this time. The Court has determined that none of the After-Acquired Equipment, at least for now, is proceeds of Pledged Membership Interests (see the discussion below).[37] The Court is acknowledging the perfection issues in this opinion because it was the subject of a great deal of evidence and argument.

*The After-Acquired Equipment is not proceeds of the Pledged Membership Interests*

FNB contends that Bowen's security interest in Pledged Membership Interests, assigned to FNB for purposes of FNB collecting indebtedness owed it by Twin Pines, attached to After-Acquired Equipment as noncash proceeds of the Pledged Membership Interests.

The U.C.C. defines "proceeds" as follows:

"Proceeds", except as used in Section 9-609(b), means the following property:

(A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;[38]

(B) whatever is collected on, or distributed on account of, collateral;

(C) rights arising out of collateral;

---

[37] The parties also disagree whether Twin Pines could avoid an unperfected security interest in After-Acquired Equipment if the there is a valid security interest in After-Acquired Equipment as proceeds of the Pledged Membership Interests. That issue likewise is not ripe for determination.

[38] Whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral need not be acquired by the original owner of the collateral for the secured party to have a security interest in proceeds. *See Case Credit Corp. v. Portales Nat'l Bank*, 1998-NMSC-035, ¶ 5, 126 N.M. 89, 90, 966 P.2d 1172, 1173 (construing a prior version of the UCC and determining that the lien attached even though the proceeds did not go to the debtor). *See also Bank of Okla., N.A., Grove Branch v. Islands Marina, Ltd.*, 918 F.2d 1476, 1480–81 (10th Cir. 1990) (construing the same version of the UCC construed in *Case Credit Corp.* but under Oklahoma law); *Fleet Cap. Corp. v. Yamaha Motor Corp., U.S.A.*, No. 01 CIV. 1047 (AJP), 2002 WL 31174470, at *35–36 (S.D.N.Y. Sept. 26, 2002) (explaining the rationale for the rule).

(D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or

(E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

U.C.C. § 9-102(64).

FNB argues that even though none of the Pledged Membership Interests have yet been transferred to International Protection or Ruidoso Capital Reserves, the security interest in question nevertheless has attached to the After-Acquired Equipment. Relying on *First Nat'l Bank of Bethany v. Am. Gen. Fire & Cas. Co.*, 927 F.2d 1126, 1128 (10th Cir. 1991), FNB argues that it is enough for a security interest in the original collateral to attach to proceeds if there is a binding obligation to transfer the original collateral in exchange for the proceeds. In other words, FNB maintains that because (x) Pacheco Sr., Pacheco Jr., and Edmister agreed to transfer the Pledged Membership Interests (the original collateral) to International Protection's designee Ruidoso Capital Reserves in exchange for International Protection purchasing After-Acquired Equipment (the noncash proceeds), and (y) Twin Pines now has rights in the After-Acquired Equipment, then (z) the security interest has attached to the proceeds (the After-Acquired Equipment).

The Court need not decide, however, whether a security interest attaches to property to be transferred in exchange for the original collateral at the time that a binding obligation is made to make the transfer, because the Court has found that there exists no binding obligation to transfer Pledged Membership Interests to International Protection or Ruidoso Capital Reserves. Therefore, unless Pledged Membership Interests are transferred, the After-Acquired Equipment cannot be proceeds of the Pledged Membership Interests. In other words, unless there is a disposition of the collateral, i.e., a transfer of the Pledged Membership Interests in exchange for
-16-

After-Acquired Equipment), the After-Acquired Equipment does not meet the U.C.C.'s definition of "proceeds."

The promise to International Protection is that Ruidoso Capital Reserves will receive a 33% Membership Interest upon confirmation of a plan. No promise was made to the Penas, International Protection, or Ruidoso Capital Reserves that the transferred Membership Interests will consist of the Pledged Membership Interests. When Joanna Pena and International Protection made the Oral Agreement for Ruidoso Capital Reserves to become a 33% member of Twin Pines and when International Protection paid the money for the purchase of After-Acquired Equipment, the Penas, International Protection, and Ruidoso Capital Reserves were unaware that any of the Membership Interests were encumbered. The Penas, International Protection, and Ruidoso Capital Reserves bargained for an unencumbered 33% Membership Interest. Now that the Penas, International Protection, and Ruidoso Capital Reserves know that 50% of the Membership Interests are encumbered, it is not at all clear that, if Twin Pines' plan is confirmed, Ruidoso Capital Reserves will receive Pledged Membership Interests.[39]

FNB argues that Ruidoso Capital Reserves necessarily will receive a Pledged Membership Interest. But that is not so. There is no definite agreement among Pacheco Sr., Pacheco Jr.,[40] and Edmister regarding which Membership Interests, pledged or unencumbered, would be transferred to Ruidoso Capital Reserves, or by whom. Depending on which Membership Interests are transferred to Ruidoso Capital Reserves, Ruidoso Capital Reserves

---

[39] The Court notes that if International Projection or Ruidoso Capital Reserves receive Pledged Membership Interests, they would not receive the Membership Interests free of the security interest granted to Bowen. They are not a "protected purchaser" of a security under the Uniform Commercial Code because they did not have control of the securities before learning of an adverse claim. *See* U.C.C. § 8-303(a), (b) and U.C.C. § 9-331(a).

[40] The evidence is conflicting regarding whether Pacheco Jr. still owns his 20% Membership Interest, transferred it to Pacheco Sr., or transferred half of his 20% Membership Interest to Pacheco Sr. and half to Edmister. There is no written evidence that a transfer occurred.

could end up with wholly unencumbered Membership Interests.[41] Alternatively, Ruidoso Capital Reserves could end up with both Pledged Membership Interests and unencumbered Membership Interests, in which event it might be necessary to pro rate the amount of After-Acquired Equipment that is proceeds of Pledged Membership Interests.[42] Nothing in the Debtor's Second Amended Plan of Reorganization (Subchapter V) Dated May 3, 2021,[43] or the Third Modification to Debtor's Second Amended Plan of Reorganization (Subchapter V) Dated May 3, 2021[44] specifies how the resulting ownership of Twin Pines' Membership Interests will be accomplished upon confirmation.

Because the evidence now before the Court does not establish that Pledged Membership Interests will be transferred to Ruidoso Capital Reserves, the Court cannot conclude that After-Acquired Equipment is proceeds of the Pledged Membership Interests. Thus, FNB has failed to demonstrate that its secured claim is secured by After-Acquired Equipment.

## CONCLUSION

Based on the foregoing, the Court will sustain Twin Pines' objections to FNB's Claim 3-2 and Bowen's Claim 5-3. FNB's Claim is not secured by the After-Acquired Equipment because the evidence now before the Court fails to establish that the After-Acquired Equipment

---

[41] For example, Edmister and Pacheco Sr. each have unencumbered 25% Membership Interests. If half of Pacheco Jr.'s 20% Membership Interest is transferred to Pacheco Sr. and half to Edmister, then Pacheco Sr. and Edmister will each have 50% of the Membership Interests. Edmister could then transfer an unencumbered 17% Membership Interest and Pacheco Sr. could transfer an unencumbered 16% Membership Interest to Ruidoso Capital Reserves resulting in an ownership of 34% to Pacheco Sr., 33% to Edmister, and 33% (unencumbered) to Ruidoso Capital Reserves. If Pacheco Jr. has already transferred his 20% Membership Interest to Pacheco Sr., or half to each of Pacheco Sr. and Edmister, other scenarios are possible in which Ruidoso Capital Reserves would end up with a wholly unencumbered 33% Membership Interest, even it required Pacheco Sr. to transfer a certain amount of Pledged Membership Interests to Edmister so he still ends up with 33%.

[42] The evidence before the Court indicates that International Protection paid only a portion of the purchase price for the After-Acquired Equipment. If Pledged Membership Interests are ultimately transferred to Ruidoso Capital Reserves it might require a further pro ration for that reason.

[43] *See* Doc. 268.

[44] *See* Doc. 390.

is proceeds of the Pledged Membership Interests. FNB's Claim 3-2 must therefore be disallowed to the extent it asserts FNB has a security interest in After-Acquired Equipment. Such disallowance of Claim 3-2 is without prejudice to the Court reconsidering its disallowance ruling if Pledged Membership Interests are transferred to International Protection or Ruidoso Capital Reserves under the Oral Agreement or as a result of a confirmed plan.

Bowen's Claim 5-3 also fails. Except for his in rem claim against Twin Pines based on After-Acquired Equipment being proceeds of Pledged Membership Interests, Bowen has no claim against Twin Pines. His claim is against the individuals to whom he sold Membership Interests. Bowen assigned his in rem claim against Twin Pines to FNB for purposes of FNB collecting indebtedness owed it by Twin Pines. FNB is asserting that in rem claim against Twin Pines, as assignee. Because Bowen no longer owns the in rem claim against Twin Pines, and has no other valid claim against Twin Pines, the Court will disallow Bowen's Claim 5-3 in its entirety.

The Court will enter separate orders consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: November 4, 2021

COPY TO:

William F. Davis
Attorney for Debtor
William F. Davis & Assoc. PC
6739 Academy Rd. NE, Ste 256
Albuquerque, NM 87109

Rebekah Anne Courvoisier
Attorney for FNB
Courvoisier Law, LLC
1109 Indiana Avenue
Alamogordo, NM 88310

Michael E. Bowen
6733 Academy Rd. NE
Albuquerque, NM 87109